Michael Zoldan; AZ Bar No. 028128
Jessica Miller; AZ Bar No. 031005
**ZOLDAN LAW GROUP, PLLC**
14500 N. Northsight Blvd., Suite 213
Scottsdale, AZ 85260
Tel & Fax: 480.442.3410
mzoldan@zoldangroup.com
jmiller@zoldangroup.com

Attorneys for Plaintiff
Sunny Anthony

### UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| **Sunny Anthony**, an Arizona Resident, | Case No. |
| Plaintiff, | |
| v. | **VERIFIED COMPLAINT** |
| **Trax International Corporation**, a Nevada Corporation, | |
| Defendants. | |

Plaintiff Sunny Anthony ("**Anthony**"), for her Verified Complaint against Defendant Trax International Corporation ("**TRAX**" or the "**Company**"), hereby alleges as follows:

### **PARTIES**

1. Plaintiff currently resides in Yuma County, Arizona. At all relevant times during her employment with Defendant, Plaintiff was a resident of Yuma County, Arizona.

2. Upon information and belief, TRAX is a Nevada Corporation that is registered to conduct business and is currently doing business in the State of Arizona.

Page **1** of **10**

## JURISDICTION AND VENUE

3. All acts complained herein occurred in Yuma County, Arizona, and this Court has jurisdiction over the parties and subject matter set forth in this Complaint pursuant to the Americans with Disabilities Act and the ADA Amendments Act (collectively referred to as "**ADA**"), 42 U.S.C. 12101, *et seq*.

4. This Court has federal question subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 in that the claims set forth in this Complaint arise under federal law.

5. The employment practices alleged to be unlawful were committed within, and had their primary effect in, the jurisdiction of the United States District Court for the District of Arizona.

6. Plaintiff was, at all relevant times, an employee of TRAX within the meaning of the ADA.

7. At all relevant times, TRAX has continuously been an employer engaged in an industry affecting commerce, employing fifteen or more employees, within the meaning of the ADA.

8. Plaintiff has exhausted all administrative and statutory prerequisites necessary to commence this action, and therefore jurisdiction is proper.

9. On March 2, 2016, the EEOC issued a cause determination with respect to Plaintiff's EEOC Charge No. 540-2012-02867, finding "reasonable cause to believe [TRAX] discriminated against [Plaintiff] because of her disability, in violation of the ADAAA, when it denied [Plaintiff] reasonable accommodation by requiring her to return to work with no restrictions resulting in her termination.

10. Personal jurisdiction in this Court is proper.

11. Venue in this Court is proper.

## FACTUAL ALLEGATIONS

12. Plaintiff commenced employment with TRAX on or around April 7, 2010 as a test coordinator.

13. Beginning in 2011, Plaintiff was subjected to extreme and pervasive harassment by her co-worker, Steven Lawless.

14. Lawless's harassment of Plaintiff included, among other things, swearing at her, yelling at her, slamming objects on desks in an intimidating fashion towards her, throwing objects at her, and generally displaying an aggressive and hostile demeanor towards Plaintiff.

15. Plaintiff was subjected to Lawless's hostility on a daily basis for no less than seven months.

16. During this time frame, as Lawless continued to interact with Plaintiff in a hostile manner, Plaintiff's health began to deteriorate.

17. Plaintiff experienced panic attacks and other depression related symptoms, including, but not limited to, nausea, upset stomach, adrenal exhaustion, excessive tiredness, loss of hair, hives, unstable blood sugar levels, excessive weight gain, dizziness, and difficulty breathing.

18. Plaintiff's anxiety, depression, and related symptoms constitute a disability under the ADA.

19. Plaintiff's disability substantially interferes with, *inter alia*, her ability to perform several major life activities such as sleeping, eating, and working.

20. As Lawless's conduct persisted, and Plaintiff's health condition continued to deteriorate, Plaintiff filed a written complaint to a member of the Company's management team, Andrew Schaeffer.

21. Plaintiff's complaint identified her disability and related symptoms as well as the hostile work environment she was experiencing. Plaintiff's complaint identified her disabilities and also informed the Company that she was considering FMLA leave and/or workers' compensation due to her health condition.

22. In January 2012, Plaintiff met with the Company's Benefits Coordinator, Angness Burneau.

23. During Plaintiff's January 2012 meeting with Burneau, Plaintiff requested information regarding the FMLA, workers' compensation, or any potential accommodations she may be entitled to as a result of her disabilities.

24. Burneau only provided Plaintiff with FMLA paperwork and information related to filing a short term disability claim.

25. Neither Burneau nor any other TRAX personnel discussed providing Plaintiff with an accommodation under the ADA.

26. Plaintiff was informed by Burneau that completing FMLA paperwork was the first step she was required to complete in order for Plaintiff to remain employed.

27. In April 2012, Plaintiff's physician filled out the FMLA certification form that was provided to Plaintiff by TRAX. Plaintiff delivered the completed FMLA form to Burneau.

28. Consistent with Plaintiff's written complaint to Schaeffer, the FMLA certification form identified her anxiety and other disability related symptoms.

29. The FMLA certification provided for Plaintiff's absence from work from April 4, 2012 through April 16, 2012.

30. The FMLA certification also identified restrictions that Plaintiff's physician suggested that she adhere to following her return to work, such as refraining from driving a Company car.

31. As a test coordinator, Plaintiff never drove a Company car and was likewise never informed that the ability to drive a Company car was an essential function of her job, which was predominately administrative and clerical in nature.

32. Upon receiving the FMLA certification, Burneau informed Plaintiff that Company policy stated that Plaintiff could not return to work with any restrictions nor could she return to work while under the care of a physician.

33. Burneau further informed Plaintiff that she believed the certification was erroneous without identifying to Plaintiff what aspects of the certification she believed required amendment or modification.

34. Burneau contacted Plaintiff's physician's office and threatened that Plaintiff's job was in jeopardy as a result of the submitted certification.

35. In April 2012, Plaintiff again informed the Company that she was ready, willing, and able to return to work subject to resolution on any disability related accommodations.

36. Without engaging in the interactive process regarding whether any such medically related restrictions could be accommodated, TRAX insisted that Plaintiff could not return to work while she was either under the care of medical provider or subject to any restrictions.

37. In May 2012, Burneau communicated to Plaintiff's physician's office that Plaintiff would be unable to return to work unless and until her physician confirmed that she had no medically related restrictions.

38. On June 1, 2012, Plaintiff contacted Burneau and requested the ability to work from home as an accommodation.

39. Plaintiff believed such an accommodation was reasonable, particularly because other similarly situated TRAX employees were permitted to work from home.

40. TRAX denied Plaintiff's request to work from home and likewise failed to provide a legitimate justification for doing so.

41. On June 28, 2012, Plaintiff was informed that her FMLA leave had expired.

42. Plaintiff was further informed by TRAX that she would receive a letter in the mail explaining that she would be terminated in 30 days unless she could demonstrate to the Company that (i) she was no longer under the care of a physician; and (ii) that she had no medically related restrictions whatsoever.

43. Plaintiff did not receive the letter identified above.

44. Plaintiff was therefore terminated on or around July 30, 2012 because of her disabilities, accommodation and leave requests, and complaints of discrimination.

45. Prior to her termination, TRAX did not adequately engage in the interactive process to determine whether or not it could accommodate Plaintiff either during or after her FMLA leave period.

46. TRAX did not offer alternative reasonable accommodations such as modified work schedule, reassignment, further leave allotment, ability to work from home, and/or delegation of non-essential job functions. Instead, it jumped the gun and

fired Plaintiff demonstrating its unwillingness to accommodate or otherwise engage in the interactive process.

47. Upon information and belief, other non-disabled similarly situated employees have received work from home accommodations that were not afforded to Plaintiff.

48. Plaintiff has been unable to procedure subsequent comparable employment since her unlawful termination.

## COUNT I
## DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT

49. Plaintiff reasserts and realleges each and every allegation in this Complaint as if fully set forth herein.

50. The ADA prohibits discrimination against a qualified individual with a disability in regard to terms, conditions and privileges of employment.

51. Plaintiff has a physical or mental impairment that substantially limits a major life activity.

52. In the alternative, the length of time during which Plaintiff has experienced symptoms, and for which she will continue to suffer from, constitutes a record of impairment.

53. In the alternative, Plaintiff was regarded as having a disability under the ADA.

54. Plaintiff suffers from depression and anxiety (and related symptoms), which is a disability as defined by the ADA.

55. Defendant is an employer under the ADA.

56. Defendant knew of Plaintiff's disability.

57. Defendant treated Plaintiff disparately as compared to other similar situated non-disabled employees because of her disability.

58. Plaintiff is qualified to perform the essential functions of her position and performed her job duties and responsibilities in an exemplary manner at all relevant times during her employment with Defendant.

59. Plaintiff requested reasonable accommodations to allow her to perform the essential functions of her position.

60. Defendant discriminated against Plaintiff by failing to provide her with reasonable accommodations and terminated her due to her disabilities.

61. Accommodating Plaintiff's reasonable requests would not inflict undue hardship on Defendant.

62. Defendant failed to engage Plaintiff in the interactive process prior to her termination to determine whether or not she could be accommodated.

63. Plaintiff's reasonable requests would not pose a direct threat to the health or safety of other individuals in the workplace.

64. As a direct, intentional, and willful consequence of such illegal conduct, Plaintiff suffered adverse employment actions including, *inter alia*, termination of employment.

65. As a result, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT II
## RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT

66. Plaintiff reasserts and realleges each and every allegation in this Complaint as if fully set forth herein.

67. The ADA prohibits discrimination against any individual because such

individual engaged in protected activity under the ADA.

68. Plaintiff engaged in protected activity by filing a formal complaint with respect to her disability and by requesting numerous reasonable accommodations and terms of leave.

69. Defendant retaliated against Plaintiff for exercising protected conduct by, *inter alia*, subjecting her to increased scrutiny related to her disability related leave and related requests, refusing to accommodate her, and ultimately terminating her employment.

70. Such retaliatory termination constitutes adverse employment action as contemplated by the ADA.

71. As a direct, intentional, and willful consequence of such illegal conduct, Plaintiff suffered adverse employment actions including, *inter alia*, termination of employment.

72. As a result, Plaintiff has been damaged in an amount to be proven at trial.

## CONCLUSION AND PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant, as follows:

A. An award of damages for all counts in an amount to be proven at trial;

B. An award of compensatory and punitive damages in an amount to be proven at trial;

C. An award of back pay and front pay (deferring to Title VII remedial structure allowing award of back pay and other equitable relief (*see* 42 U.S.C. § 2000e-5(g)(1)).

D. Pre- and post-judgment interest;

E. Reasonable attorneys' fees, costs and other expenses under the ADA pursuant to 42 U.S.C. § 12205; and

F. Any other remedies or judgments deemed just and equitable by this Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

RESPECTFULLY SUBMITTED August 2, 2016.

**ZOLDAN LAW GROUP, PLLC**

By: /s/ Michael Zoldan
14500 N. Northsight Blvd., Suite 213
Scottsdale, AZ 85260
Attorneys for Plaintiff Sunny Anthony

## **VERIFICATION**

Plaintiff Sunny Anthony declares under penalty of perjury that she has read the foregoing Verified Complaint and is familiar with the contents thereof. The matters asserted therein are true and based on her personal knowledge, except as to those matters stated upon information and belief, and as to those matters, she believes them to be true.



Sunny Anthony