**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SUNNY ANTHONY, an Arizona resident,<br><br>                    *Plaintiff-Appellant*,<br><br>                    v.<br><br>TRAX INTERNATIONAL CORPORATION, a Nevada corporation,<br><br>                    *Defendant-Appellee.* | No. 18-15662<br><br>D.C. No.<br>2:16-cv-02602-ESW<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Arizona
Eileen S. Willett, Magistrate Judge, Presiding

Argued and Submitted November 15, 2019
San Francisco, California

Filed April 17, 2020

Before:  Kim McLane Wardlaw, William A. Fletcher,
and Richard Linn,[*] Circuit Judges.

Opinion by Judge Wardlaw

---

[*] The Honorable Richard Linn, United States Circuit Judge for the U.S. Court of Appeals for the Federal Circuit, sitting by designation.

# SUMMARY[**]

### Employment Discrimination

The panel affirmed the district court's grant of summary judgment in favor of the employer in a disability discrimination action under Title I of the Americans with Disabilities Act.

After plaintiff filed suit, alleging that her employer terminated her from her position as a technical writer because of her disability, the employer learned that, contrary to her representation on her employment application, plaintiff lacked the bachelor's degree required of all technical writers under the employer's government contract. Under the two-step qualified individual test promulgated by the EEOC and embedded in the court's precedent, an individual who fails to satisfy the job prerequisites cannot be considered "qualified" under the ADA unless she shows that the prerequisite is itself discriminatory in effect. Disagreeing with the Seventh Circuit and agreeing with other circuits, the panel held that a limitation on the use of after-acquired evidence, applicable under *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995), to an employer attempting to excuse its discriminatory conduct under the Age Discrimination in Employment Act, does not extend to evidence used to show that an ADA plaintiff is not a qualified individual, as required to establish a prima facie case of disability discrimination. Further, the employer had

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

no obligation to engage in the interactive process to identify and implement reasonable accommodations.

## COUNSEL

Michael Zoldan (argued), Zoldan Law Group, Scottsdale, Arizona, for Plaintiff-Appellant.

Scott A. Hagen (argued) and D. Zachary Wiseman, Ray Quinney & Nebeker P.C., Salt Lake City, Utah, for Defendant-Appellee.

Barbara L. Sloan (argued), Attorney; Anne Noel Occhialino, Acting Assistant General Counsel; Jennifer S. Goldstein, Associate General Counsel; James L. Lee, Deputy General Counsel; U.S. Equal Employment Opportunity Commission, Office of General Counsel, Washington, D.C.; for Amicus Curiae.

James R. Sigel (argued), Morrison & Foerster LLP, San Francisco, California; Joseph R. Palmore and Bryan J. Leitch, Morrison & Foerster LLP, Washington, D.C.; Daryl L. Joseffer and Michael B. Schon, U.S. Chamber Litigation Center, Washington, D.C.; for Amicus Curiae Chamber of Commerce of the United States of America.

## OPINION

WARDLAW, Circuit Judge:

Sunny Anthony appeals the grant of summary judgment in favor of TRAX International Corporation (TRAX) in her action alleging disability discrimination under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (ADA).[1]  The ADA prohibits discrimination against "a qualified individual on the basis of disability."  *Id.* at § 12112(a).  Here, TRAX terminated Anthony from her position as a Technical Writer—a position that by virtue of a third-party contract required a bachelor's degree in English, journalism, or a related field—allegedly due to an inability or unwillingness to accommodate her disability. TRAX discovered during the course of this litigation that Anthony lacked the requisite degree.  We must decide under these circumstances whether such "after-acquired evidence" that an employee does not satisfy the prerequisites for the position, including educational background, renders the employee ineligible for relief under the ADA.

## I.

TRAX, a contractor for the Department of the Army, hired Anthony as a "Technical Writer I" in April 2010. Anthony had a history of post-traumatic stress disorder and related anxiety and depression.  Her condition worsened, requiring her to miss periods of work.  As a result, Anthony applied for and obtained leave under the Family and Medical Leave Act (FMLA) in April 2012.  Anthony's physician

---

[1] Anthony does not appeal the dismissal of her claim for retaliation.

estimated that her condition would likely continue until May 30, 2012.

On June 1, 2012, Anthony asked to work from home, but TRAX denied her request.  TRAX's Benefits Coordinator extended the time of her FMLA leave for thirty days, but notified Anthony that she would be fired unless she provided a "full work release," a doctor's clearance for return to work with no restrictions, by the time her leave expired on July 26, 2012.  Because Anthony never submitted a full work release, TRAX terminated her employment effective July 30, 2012. According to TRAX's then-Manager of Human Resources, Anthony would have been eligible for rehire in administrative support positions that were open at the time.

Soon after she was fired, Anthony filed this suit for disability discrimination under the ADA, alleging that TRAX terminated her because of her disability and that it failed to engage in the statutorily required interactive process to find her a reasonable accommodation for employment. During litigation of this action, TRAX learned that Anthony lacked the bachelor's degree required of all Technical Writers, contrary to her representation on her employment application.  The bachelor's degree prerequisite is not subjective, unrelated to the job, or open to exception: under TRAX's government contract, it may bill for Technical Writer work only if the employee in question has a bachelor's degree.

The parties cross-moved for summary judgment.  The district court entered judgment in favor of TRAX, reasoning that, in light of the after-acquired evidence that Anthony lacked the required bachelor's degree when she was terminated, she was not a "qualified individual" within the protection of the ADA.  The district court did not address

Anthony's argument that TRAX failed to engage in the interactive process to identify reasonable accommodations.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review the district court's grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in the light most favorable to the non-moving party." *Cohen v. City of Culver City*, 754 F.3d 690, 694 (9th Cir. 2014) (citing *Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011)). "We must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* (citing *Del. Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1119 (9th Cir. 2008)).

## III.

### A.

Title I of the ADA provides:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). The text of § 12112(a) thus protects only "qualified individuals" from employment disability discrimination. *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1112 (9th Cir. 2000); *Id.* at 1108 ("The plain language of the [ADA] thus allows only those who are

'qualified individuals' to bring suit.").    Accordingly, Anthony carries the initial burden of establishing that she is a qualified individual as part of her prima facie disability discrimination case.  *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001); *see Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007) (en banc) ("[U]nder the ADA, an employee bears the ultimate burden of proving that [she] is . . . a qualified individual with a disability . . . ." (internal quotation marks omitted)).

Section 12111(8) of the ADA explicitly defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

However, the "Equal Employment Opportunity Commission ('EEOC'), the agency to which Congress delegated authority to implement Title I of the ADA, has promulgated a regulation expanding this definition." *Johnson v. Bd. of Trustees of Boundary Cty. Sch. Dist. No. 101*, 666 F.3d 561, 564–65 (9th Cir. 2011) (internal citations omitted) (citing 56 Fed. Reg. 35,726, 35,735 (July 26, 1991)).  The EEOC promulgated 29 C.F.R. § 1630.2(m) to further elaborate upon the meaning of the term "qualified." That subsection sets forth a two-step inquiry for determining whether the individual is qualified.  We first determine whether the individual satisfies the prerequisites of the job; more specifically, whether "the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires."  At step two, we determine whether, "with or without reasonable accommodation," the individual is able to "perform the essential functions of such position." 29 C.F.R. § 1630.2(m).

The EEOC has also issued Interpretive Guidance on Title I of the Americans with Disabilities Act that further expounds on the definition of qualified individual. *See* 29 C.F.R. pt. 1630, app. to § 1630.2(m). At the first step, this guidance asks us to "determine if the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." *Id.* We then go on to step two to "determine whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Id.*

## B.

At no time did Anthony satisfy the prerequisites step of the qualified individual element of an ADA prima facie case; it is undisputed that she never possessed the requisite bachelor's degree, and it is undisputed that, pursuant to TRAX's government contract, the bachelor's degree was an actual requirement of the Technical Writer position that could not be satisfied by any functional equivalent. However, Anthony, and the EEOC as amicus, argue that because her lack of a bachelor's degree was "after-acquired evidence"—evidence discovered well after the discriminatory adverse employment action—at most it should be used to limit liability.

## 1.

Amicus EEOC perplexingly argues that we should disregard its regulation and interpretive guidance and revert to the plain language of 42 U.S.C. § 12111, which defines "qualified individual" as one who can perform the essential functions of the employment position such individual holds or desires. According to the EEOC, 29 C.F.R. § 1630.2(m) does not require all plaintiffs challenging disability-based

discriminatory conduct to show they satisfy the job's prerequisites in order to bring suit under the ADA. It argues that because Anthony's lack of a bachelor's degree was irrelevant to the decision to terminate her employment, Anthony can establish a prima-facie case of disability discrimination and withstand summary judgment with evidence that she can perform the essential job functions— "the standard for qualification that Congress expressly set forth in the statute."

The EEOC is not seeking deference under *Auer v. Robbins*, 519 U.S. 452 (1997), for the interpretation of 29 C.F.R. § 1630.2(m) that it advances in this litigation, *see* Dkt. 47, and so we need not determine whether the regulation is ambiguous. Likewise, we decline to determine whether the statute is ambiguous or capable of an interpretation in accord with the EEOC's position. Instead, as we must, we adhere to our precedent that has adopted the job prerequisites inquiry described in the EEOC's regulations as a mandatory step in the "qualified individual" determination.

In *Bates*, we explained that, under the ADA and the EEOC's regulations, "[q]ualification for a position is a two-step inquiry," beginning with "whether the individual satisfies the 'requisite skill, experience, education and other job-related requirements' of the position." 511 F.3d at 990 (quoting 29 C.F.R. § 1630.2(m)). The package-car driver position at issue in *Bates* "require[d] an applicant to meet [the employer's] threshold seniority requirements . . . , complete an application, be at least twenty-one years of age, possess a valid driver's license, and have a clean driving record by [the employer's] local standards." *Id.* at 990. Applying the two-step qualified individual test, we first ensured that the plaintiff met each of these prerequisites

before even considering whether the plaintiff could perform the job's essential functions.  *Id.*

We reaffirmed our adoption of the "two-step qualification inquiry" in *Johnson*: "We have previously adopted the EEOC's two-step inquiry as the test for whether an individual is qualified within the meaning of the ADA." 666 F.3d at 565 (citing *Bates*, 511 F.3d at 990); *see also Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (applying the EEOC's two-step test as adopted in *Bates*).[2]  Thus, "an individual who fails to satisfy the job prerequisites cannot be considered 'qualified' within the meaning of the ADA unless she shows that the prerequisite is itself discriminatory in effect."  *Johnson*, 666 F.3d at 567.

Anthony cites no authority interpreting the EEOC's regulations differently.

2.

In a related argument, Anthony contends that courts applying the two-step qualified individual test are limited to the facts known to the employer at the time of the challenged employment decision.  As support, she takes out of context

---

[2] Other circuits have likewise adopted the EEOC's two-step inquiry as the test to determine whether a person is a "qualified individual" within the meaning of the ADA.  *See Criado v. IBM Corp.*, 145 F.3d 437, 443 (1st Cir. 1998); *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 98 (2d. Cir. 2009); *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 145 (3d Cir. 1998) (en banc); *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 n.14 (5th Cir. 1997); *Branham v. Snow*, 392 F.3d 896, 904 (7th Cir. 2004); *Benson v. Nw. Airlines, Inc.*, 62 F.3d 1108, 1111–12 (8th Cir. 1995); *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 992–93 (10th Cir. 2001); *Jarvela v. Crete Carrier Corp.*, 776 F.3d 822, 828–29 (11th Cir. 2015).

a portion of the interpretive guidance in 29 C.F.R. § 1630(m).

The EEOC has issued guidance as to when the determination as to whether an individual is qualified is to be made:

> The determination of whether an individual with a disability is qualified is to be made *at the time of the employment decision*. This determination should be based on the capabilities of the individual with a disability at the time of the employment decision, and should not be based on speculation that the employee may become unable in the future or may cause increased health insurance premiums or workers compensation costs.

29 C.F.R. pt. 1630, app. to § 1630.2(m) (emphasis added). This guidance clarifies that an employee must show she was qualified at the time of the adverse employment action, rather than at some earlier or later time. It does not limit the qualification determination to the facts known to the employer at the time of the challenged employment action. And for good reason—an employer's subjective knowledge has no bearing on the "skill, experience, education and other job-related [qualifications]," 29 C.F.R. § 1630.2(m), that a person in fact possesses.

### 3.

Anthony argues that *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995), precludes the use of after-acquired evidence to demonstrate that she is unqualified for failing to satisfy the prerequisites prong. But *McKennon* was a case in which the defendant conceded it

had unlawfully discriminated against the plaintiff on the basis of age and was attempting to use after-acquired evidence of wrongdoing to assert that the plaintiff would have been fired anyway and to excuse its discriminatory conduct. 513 U.S. at 355–56. This is what the Supreme Court held impermissible, even as it allowed the evidence as relevant to the remedies available to the plaintiff. *Id.* at 356, 360.

In *McKennon*, the plaintiff sued for discrimination under the Age Discrimination in Employment Act (ADEA), which makes it unlawful "to discharge any individual . . . because of [her] age," 29 U.S.C. § 623(a)(1). *McKennon* held that permitting "after-acquired evidence of wrongdoing that would have resulted in termination [to] operate[], in every instance, to bar all relief for an earlier violation of the [ADEA]" would be contrary to the deterrence and compensation objectives behind the ADEA and other statutes within that statutory scheme. *McKennon*, 513 U.S. at 358. Although the ADEA and the ADA are part of the same "statutory scheme to protect employees in the workplace," *McKennon*, 513 U.S. at 357, the ADA expressly limits its protection to qualified individuals. The ADEA, in contrast, has *no* qualified individual element. *Compare* 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against *a qualified individual* on the basis of disability. . . ." (emphasis added)) *with* 29 U.S.C. § 623(a) ("It shall be unlawful for an employer . . . to . . . discriminate against *any individual* . . . ." (emphasis added)).

Moreover, the employer in *McKennon* did not attempt to use after-acquired evidence to rebut the plaintiff's prima facie case. It instead argued that after-acquired evidence could provide a retroactive, legitimate justification for the employee's admittedly discriminatory discharge. *Id.* at 355–

56. The Supreme Court disagreed that after-acquired evidence of a nondiscriminatory basis for firing could be used to avoid liability. The Court reasoned that the employer "could not have been motivated by knowledge it did not have" and therefore "[could not] now claim that the employee was fired for the nondiscriminatory reason" that it discovered only after-the-fact. *Id.* at 360. It defies logic to say that an employee was terminated for a reason that the employer was not even aware of at the time.

The same is not true of the qualification inquiry. An employer's ignorance cannot create a credential where there is none. Here, Anthony lacked a bachelor's degree at the time she was terminated regardless of whether TRAX was aware of this fact. Furthermore, under the burden-shifting standard applicable to ADA claims at summary judgment, we reach the question addressed in *McKennon*—whether there was a legitimate, nondiscriminatory reason for the plaintiff's discharge—only *after* Anthony establishes her prima facie case, including the qualified individual element. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001) (applying the *McDonnell Douglas* framework to ADA discrimination cases).

Consistent with *McKennon*, we previously held that, "[a]lthough it is questionable whether [an employer] could justify [a challenged employment decision] . . . based on evidence obtained after its decision [was made], the admissibility of post-decision evidence is not necessarily forbidden for all purposes." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) (citation omitted). For example, a defendant employer sued under the Rehabilitation Act may use after-acquired evidence "to rebut [an applicant's] claim that she was qualified for the position, but . . . [not] to

enlarge the basis upon which the employer relied to reject the [applicant] at the time that decision was made." *Id.* It follows that an employer may likewise use after-acquired evidence to rebut an employee's claim that she is a qualified individual under the ADA. *See Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) ("[C]ourts routinely look to Rehabilitation Act case law to interpret the rights and obligations created by the ADA."); *Collings v. Longview Fibre Co.*, 63 F.3d 828, 832 n.3 (9th Cir. 1995) ("The legislative history of the ADA indicates that Congress intended judicial interpretation of the Rehabilitation Act be incorporated by reference when interpreting the ADA."). Notably, our holding in *Mantolete* is consistent with that later reached by the Supreme Court in *McKennon*: both opinions conclude that after-acquired evidence of an employee's wrongdoing cannot be used to establish an alternative motivation for a challenged employment action. *See McKennon*, 513 U.S. at 360.

In sum, *McKennon* held that after-acquired evidence cannot establish a superseding, non-discriminatory justification for an employer's challenged actions. But as we held in *Mantolete*, after-acquired evidence remains available for other purposes, including to show that an individual is not qualified under the ADA.

i.

The limited out-of-circuit authority on the breadth of the Supreme Court's holding in *McKennon* is either in accord or unpersuasive.

*Rooney v. Koch Air, LLC*, 410 F.3d 376 (7th Cir. 2005), on which amicus EEOC relies, is unpersuasive. In *Rooney*, the plaintiff alleged that his employer had constructively discharged him because of his disability, in violation of the

ADA. *Id.* at 378. The defendant learned during discovery that the plaintiff did not have a valid driver's license, which necessarily meant that he could not satisfy all of the prerequisites of his job. *Id.* at 382. The Seventh Circuit did not "place any weight" on this after-acquired evidence in concluding that Rooney was not a qualified individual. *Id.* at 378, 382. According to the Seventh Circuit, *McKennon* held that "after-acquired evidence . . . does not bar all relief," and the Seventh Circuit could "see no distinction for this purpose between an age discrimination claim like the one in *McKennon* and an ADA claim." *Id.* at 382. This conclusion overlooks the distinction between the use of after-acquired evidence to negate an element of a plaintiff's prima facie case and its use to establish a nondiscriminatory motive for the adverse employment action. It is also in some tension with other Seventh Circuit precedent. *See Teahan v. Metro-North Commuter R.R. Co.*, 80 F.3d 50, 55 (7th Cir. 1996) (holding that "the rule announced in *McKennon* ha[d] no application" in a Rehabilitation Act case in which the employer offered after-acquired evidence not "to present an alternative, 'legitimate' motive for dismissing [an employee]" but to show why he was not otherwise qualified).

*Bowers v. National Collegiate Athletic Association*, 475 F.3d 524 (3d Cir. 2007), another out-of-circuit case on which Anthony relies, provides no support for her position. *Bowers* addressed whether the National Collegiate Athletic Association (NCAA) and two universities discriminated against a high school student because of his learning disability by deeming him a "nonqualifer"—meaning he did not meet the NCAA's initial eligibility requirements—and ceasing recruitment efforts. *Id.* at 530, 536. During the discovery process, the defendants learned that Bowers had abused drugs. They moved for summary judgment on the

basis that his drug abuse rendered him a nonqualifier and that he therefore was not a qualified individual under the ADA. *Id.* at 533–34.

The Third Circuit held that the evidence of drug abuse did not render Bowers an unqualified individual not because the evidence of his drug use was *acquired* after the alleged discriminatory action but because the drug use itself *occurred* after, and as a result of, the alleged discriminatory action. *Id.* at 537. At the time the discriminatory action occurred there was no evidence of drug use; it was only after Bowers was deemed ineligible for athletic recruiting that Bowers plunged into addiction and depression. His subsequent drug use had no bearing on whether Bowers was qualified at the time the athletic recruiters deemed him ineligible, or whether they did so on a discriminatory basis. Separately, the Third Circuit reasoned that, under *McKennon*, the defendants could not claim "that Bowers was deemed a nonqualifier because of his drug abuse." *Id.* Here, in contrast, Anthony lacked a bachelor's degree when the alleged discrimination occurred, and TRAX does not argue that this was the reason for her termination.

In circumstances far more similar to Anthony's, the Third Circuit deemed *McKennon* inapplicable. *See McNemar v. Disney Store, Inc.*, 91 F.3d 610 (3d Cir. 1996), *abrogated on other grounds by Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999). In *McNemar*, the plaintiff sued his employer under the ADA, alleging that he was fired because of a disability. *Id.* at 616. After he was fired, the plaintiff applied for state and federal disability benefits. *Id.* at 615. In those applications, the plaintiff represented under penalty of perjury that he became totally disabled and unable to work on a date falling at least five weeks *before* he was fired. *Id.* In other words, the plaintiff admitted that he was

not a "qualified individual" at the time he was terminated. *Id.* at 618 ("[A] person unable to work is not intended to be, and is not, covered by the ADA."). The district court granted summary judgment in favor of the employer, reasoning that the plaintiff was judicially estopped from contending that he is a qualified individual under the ADA in light of these representations. *Id.* at 616, 618–19.

On appeal, amicus EEOC raised the precise argument it asserts in this case: that McNemar's disability applications were "after-acquired evidence" with "no bearing on the *prima facie* issue of McNemar's status as a qualified individual with a disability." *Id.* at 620–21. The Third Circuit rebuffed the EEOC's argument: "[T]he EEOC wants to mix apples—a plaintiff's *prima facie* case—with oranges—a defendant's non-discriminatory-reason." *Id.* According to the Third Circuit, *McKennon*'s holding did not apply to the plaintiff's prima facie case. *Id.* "[T]he EEOC's assertion that '[a] plaintiff's claim cannot be defeated by an issue of qualifications that has nothing to do with the employer's motivation for the adverse action' becomes irrelevant . . . because that assertion has to do with [the employer's] putative pretext for firing McNemar, which is not a proper concern for the court unless McNemar first has established a *prima facie* case that he was qualified for the job." *Id.* (footnote omitted).

The Fifth and Sixth Circuits have similarly interpreted *McKennon* as precluding only the use of after-acquired evidence to show a legitimate, nondiscriminatory basis for the adverse action.

In *McConathy v. Dr. Pepper/Seven Up Corporation*, the Fifth Circuit reviewed the dismissal of an employee's ADA claim "on the basis of judicial estoppel, in that the information given in [her social security] application was

inconsistent with her claims." 131 F.3d 558, 561 (5th Cir. 1998) (per curiam). The plaintiff argued that her social security application was after-acquired evidence that could not be used to bar relief. *Id.* at 563. The Fifth Circuit disagreed, reasoning that the after-acquired evidence was being used "in relation to [her] job qualifications, a matter which has nothing to do with the motivation behind her employer's action." *Id.*

The Sixth Circuit made a similar distinction in the context of a discrimination claim under the FMLA, 29 U.S.C. § 2612. *Bauer v. Varity Dayton-Walther Corp.*, 118 F.3d 1109, 1112 (6th Cir. 1997). In *Bauer*, the Sixth Circuit held that *McKennon* permits relying on after-acquired evidence to determine that the plaintiff did not have a "serious health condition," and that he therefore did not qualify for protection under the FMLA. *Id.* According to the Sixth Circuit, *McKennon* held that after-acquired evidence was irrelevant for the purpose of establishing "the employer's motive for the discharge." *Id.* Whether a plaintiff can "establish the objective existence of a serious health condition" is unrelated to motive. *Id.* Therefore, *McKennon* had no application. *Id.* *McKennon* likewise has no application to the objective qualified individual inquiry, a matter which has nothing to do with TRAX's motivation for firing her.

ii.

Allowing employers to use after-acquired evidence to show that an ADA plaintiff is not a qualified individual will not usher in the parade of horribles Anthony conjures. Anthony argues the rule we adopt here will lead employers to scour a plaintiff's employment history for even the most minor of missing qualifications in an effort to avoid liability for discrimination. But employers sued for discrimination

already have reason to hunt for such disqualifiers since, at the very least, *McKennon* permits the use of after-acquired evidence to limit damages. *See McKennon*, 513 U.S. at 360–63. And employers are unlikely to purposefully expose themselves to significant liability on the off-chance that they might discover some obscure, missing qualification during the already costly discovery process. Moreover, employers will not be able to invent new requirements to avoid liability, since the employer must actually require the ostensibly missing qualification at the time of the allegedly discriminatory action.[3] In contrast, accepting Anthony's argument would extend coverage to those who do not in fact satisfy a job's prerequisites—including those who successfully deceived their employer as to their qualifications. Such an outcome would be at odds with Congress's express decision to limit the ADA's protections to qualified individuals.

Finally, to the extent the EEOC wants us to disregard the prerequisites step of its two-step inquiry for determining who is a qualified individual under the ADA, it could reconsider its own implementing regulations and interpretive guidance that elaborated upon the statutory definition of "qualified individual."

---

[3] As previously mentioned, Anthony does not dispute that a bachelor's degree was an actual, mandatory requirement for the Technical Writer I position. We need not and do not decide the extent to which *McKennon* might apply to circumstances in which an ostensible job prerequisite is not regularly enforced, or a technical requirement like a degree could be satisfied by the functional equivalent in experience.

## C.

Anthony separately argues that the district court erred in granting summary judgment because there is a genuine dispute as to whether TRAX engaged in good faith in the interactive process. We disagree.

"The ADA prohibits employers from discriminating against a disabled employee by 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'" *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1110–11 (9th Cir. 2000) (en banc) (footnote omitted) (quoting 42 U.S.C. § 12112(b)(5)(A)), *vacated on other grounds sub nom. US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002). From this, we have held that an employer has a mandatory obligation "to engage in an interactive process with employees in order to identify and implement appropriate reasonable accommodations," which can include reassignment. *Id.* at 1111; *Dark v. Curry Cty.*, 451 F.3d 1078, 1088 (9th Cir. 2006). "[A]n employer cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process." *Barnett*, 228 F.3d at 1116.

Importantly, however, an employer is obligated to engage in the interactive process only if the individual is "otherwise qualified." *Id.* at 1110–11; 42 U.S.C. § 12112(b)(5)(A). Anthony argues that she is "otherwise qualified," despite her failure to meet the prerequisites for the Technical Writer position, because she met the requirements for available reassignment positions.

We have held that an employee is "otherwise qualified" if he could perform the *essential functions* of his job once provided the reasonable accommodation of reassignment. *See Barnett*, 228 F.3d at 1111. We need not "consider reasonable accommodation in determining whether [an employee] satisfied the *job prerequisites*," however. *Johnson*, 666 F.3d at 565 (emphasis added); 29 C.F.R. pt. 1630, app. to § 1630.9 ("[T]he obligation to make reasonable accommodation is owed only to an individual with a disability who . . . satisfies all the skill, experience, education and other job-related selection criteria."). Thus, "unless a disabled individual independently satisfies the job prerequisites, she is not 'otherwise qualified,' and the employer is not obligated to furnish any reasonable accommodation." *Johnson*, 666 F.3d at 565–66.

It is undisputed that Anthony did not satisfy the prerequisites for the Technical Writer position. Because Anthony needed to satisfy those requirements without reasonable accommodation, whether she met the job prerequisites for available reassignment positions is irrelevant. Accordingly, she is not "otherwise qualified," and TRAX was not obligated to engage in the interactive process.

## IV.

*McKennon*'s limitation on the use of after-acquired evidence does not extend to evidence used to show an ADA plaintiff is not a qualified individual. Under the two-step qualified individual test promulgated by the EEOC and embedded in our precedent, "an individual who fails to satisfy the job prerequisites cannot be considered 'qualified' within the meaning of the ADA unless she shows that the prerequisite is itself discriminatory in effect." *Johnson*, 666 F.3d at 567. Because Anthony did not have the requisite

bachelor's degree at the time she was terminated, she was not qualified within the meaning of the ADA, and TRAX had no obligation to engage in the interactive process.

**AFFIRMED.**